**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00306-GPG-KAS

DINESH KALERA, Individually and on
Behalf of All Other Similarly Situated,

                        Plaintiff,

v.

MODIVCARE, INC., L. HEATH
SAMPSON, KENNETH SHEPARD, and
BARBARA K. GUTIERREZ,

                        Defendants.

---

**MEMORANDUM OF LAW OF IRVING FIREMEN'S RELIEF AND RETIREMENT
FUND IN FURTHER SUPPORT FOR MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF COUNSEL AND IN OPPOSITON TO
COMPETING MOTION**

---

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

ARGUMENT.................................................................................................................... 3

      A.     Skrypski Cannot Satisfy Rule 23 and Is Not the Presumptive Lead Plaintiff......... 3

      B.     Skrypski Cannot Meet the Rules 23 Adequacy Requirement and Cannot be
            Lead Plaintiff ...................................................................................................... 7

      C.     IFRRF Satisfies the PSLRA's Requirements and Is the Presumptive Lead
            Plaintiff ............................................................................................................. 10

      D.     In The Alternative, IFRRF Should Be Allowed Limited Discovery from
            Skrypski .............................................................................................................. 12

CONCLUSION................................................................................................................ 13

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Beck v. Status Game Corp.*,
1995 WL 422067 (S.D.N.Y. July 14, 1995) ................................................................................. 5

*Broadfoot v. Barrick Gold Corp.*,
2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017) ............................................................................... 13

*Clifton v. Willis*,
2024 WL 1508832 (D. Colo. Mar. 5, 2024) ............................................................................ 7, 9

*Fischler v. AmSouth Bancorporation*,
1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ............................................................................... 12

*Grace v. Perception Tech. Corp.*,
128 F.R.D. 165 (D. Mass. 1989) .................................................................................................. 6

*In re Bank One Shareholders Class Actions*,
96 F. Supp. 2d 780 (N.D. Ill. 2000) ............................................................................................ 8

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ..................................................................................................... 10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .................................................................................................. 3, 11

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006) ....................................................................................... 11

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ............................................................................................... 11

*In re Joint E. & S. Dist. Asbestos Litig.*,
133 F.R.D. 425 (E.D.N.Y. 1990) ................................................................................................. 3

*In re MicroStrategy Inc. Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) .......................................................................................... 8

*In re Surebeam Corp. Sec. Litig.,*
2004 WL 5159061 (S.D. Cal., Jan. 5, 2004) ............................................................................... 9

*In re Vicuron Pharm., Inc. Sec. Litig.*,
225 F.R.D. 508 (E.D. Pa. 2004) ................................................................................................ 11

*Juliar v. SunOpta Inc.*,
   2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ............................................................................... 11

*Landry v. Price Waterhouse Chartered Accts.*,
   123 F.R.D. 474 (S.D.N.Y. 1989) ..................................................................................................... 5

*Masri v. Wakefield*,
   106 F.R.D. 322 (D. Colo. 1984).................................................................................................... 6

*Nakamura v.  BRF S.A.*,
   2018 WL 3217412 (S.D.N.Y. July 2, 2018)............................................................................... 11

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002) ................................................................................................... 9

*Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
   2024 WL 98387 (D. Colo. 2024 ................................................................................................... 11

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
   2021 WL 1387110 (D. Colo. Apr. 13, 2021) .............................................................................. 11

*Prissert v. Emcore Corp.*,
   2009 WL 10668530 (D.N.M. Sept. 29, 2009) ............................................................................ 12

*Rao v. Quorum Health Corp.*,
   221 F. Supp. 3d 987 (M.D. Tenn. 2016) .................................................................................... 12

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002).................................................................................................... 7

*Shiring v. Tier Techs., Inc.*,
   244 F.R.D. 307 (E.D. Va. 2007)................................................................................................... 6

## Statutes

15 U.S.C. §78u-4(a)(3)(B)(i) ............................................................................................................... 1

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc)................................................................................................... 3

15 U.S.C. §78u-4(a)(3)(B)(iv) ........................................................................................................... 12

## Rules

Fed. R. Civ. P. 23.............................................................................................................*passim*

Irving Firemen's Relief and Retirement Fund ("IFRRF"), by its counsel, respectfully submits this memorandum of law in further support of its motion for its appointment as Lead Plaintiff and approval of its selection of Abraham, Fruchter & Twersky, LLP ("AF&T") as Lead Counsel for the putative class and in opposition to the competing motion filed in this action (the "Action").[1]

## INTRODUCTION

There are two pending competing motions filed by putative class members seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[2] The movants are: (1) IFRRF and (2) Christopher B. Skrypski ("Skrypski"). *See* ECF Nos. 19-20, 16-17, respectively. The movants stated losses are as follows: (1) IFRRF: $21,696.87 (ECF No. 20-3) and (2) Skrypski: $184,496.41 (ECF No. 17-2).

Pursuant to the PSLRA, this Court is to appoint the movant who is most capable of adequately representing the interests of the putative class. 15 U.S.C. §78u-4(a)(3)(B)(i). Here, that movant is IFRRF.

While it is expected that Skrypski will focus almost exclusively on the amount of his loss and argue that it provides him with the largest financial interest in the relief sought by the Class, Skrypski cannot satisfy the Rule 23 requirements needed to be appointed as a lead plaintiff. 15 U.S.C. § 78-u4(a)(3)(B)(iii)(I)(cc). In particular, as shown in detail below, Skrypski was employed at a privately-held, family founded and owned, health services company in the same business as ModivCare and worked with one of the founding family members who, after that company was

---

[1] Unless stated otherwise, capitalized terms have the same meaning as defined in IFRRF's lead plaintiff opening memorandum (ECF No. 19) or in the complaint (ECF No. 1).

[2] Two other competing motions were filed, one by Matt Rose (ECF No. 21) and one by Dinesh Kalera (ECF No. 18). On April 21, 2025, they each filed a Non-Opposition to the competing motions for appointment as lead plaintiff and approval of lead counsel. *See* ECF Nos. 32-33.

acquired by ModivCare, became its Chief Operating Officer ("COO") of the Personal Care Division at ModivCare during the Class Period. Notably, Skrypski did not purchase any ModivCare stock until this former co-worker became ModivCare's COO of the Personal Care Division. Thereafter, Skrypski traded his ModivCare stock in an unusual pattern, sometimes even buying and selling shares on the same day, raising questions as to whether he had access to inside information about ModivCare. Moreover, given his knowledge of the industry, when considered with these other factors, he cannot be regarded as typical and cannot meet the requirements of Rule 23. Accordingly, the PSLRA bars Skrypski from serving as lead plaintiff in this Action.

These details raise the possibility that Skrypski will be subject to unique defenses.[3] Alternatively, the significant questions about Skrypski's typicality, adequacy, and character raise sufficient issues that support limited discovery to obtain complete information.

IFRRF has a financial interest in the Action and is an experienced institutional investor which is committed to achieving the best possible outcome for the Class, and accordingly, IFRRF respectfully requests that the Court appoint it Lead Plaintiff. Moreover, Skrypski is an individual, while Congress enacted the PSLRA to encourage institutions to serve as lead plaintiffs. Courts have generally followed that congressional policy and appointed institutions as the lead plaintiff, even, at times, when the institution did not have as large a loss as the individual movants. *See*, Section C, *infra*. Here, where there are serious questions about whether the movant with the largest loss can satisfy the Rule 23 requirements, a movant that is an institution and does not pose any Rule 23 issues can and should be appointed Lead Plaintiff.

---

[3] Skrypski's adequacy is also put in doubt by the reports of his interactions with law enforcement concerning a possible driving while under the influence violation and criminal proceeding relating thereto. *See,* Section B, *infra*.

As such, the Court should deny the competing motion for lead plaintiff and grant IFRRF's motion.

## ARGUMENT

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). The PSLRA provides that the movant with the largest financial interest in the relief sought by the class is the presumptive most adequate plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii). However, that movant must also satisfy the Rule 23 typicality and adequacy requirements. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  Because Skrypski cannot satisfy Rule 23, he is not the presumptive most adequate plaintiff. IFRRF, as the movant with the next largest loss (and the only other competing movant at this point), which also satisfies the Rule 23 requirements is the presumptive most adequate plaintiff, and because it has no deficiencies or infirmities, IFRRF should be appointed Lead Plaintiff.

### A.     Skrypski Cannot Satisfy Rule 23 and Is Not the Presumptive Lead Plaintiff

Skrypski is not the presumptive lead plaintiff and cannot be appointed lead plaintiff because he is not typical of the other Class members, is not an adequate representative of those Class members, and, accordingly, cannot meet the Rule 23 standards.  *See In re Joint E. & S. Dist. Asbestos Litig.*, 133 F.R.D. 425, 430 (E.D.N.Y. 1990) ("Rule 23 cautions against permitting potential conflicts of interest and demands unassailable loyalty and vigorous prosecution on behalf of the class. . . . *and will not countenance even the appearance of divided loyalties*.") (emphasis added) (citation omitted).

3

Skrypski worked for a company called CareGivers America ("CareGivers") from approximately 2009 to 2016. CareGivers was a privately-owned healthcare company, providing home care and health services, including rehabilitation services. Bishop Decl. ¶4, Ex. 1. While at CareGivers, Skrypski was the Director of Rehabilitation Services. *Id.* Skrypski left CareGivers to form his own company, called Compass Home Health and Rehab LLC ("Compass"), offering essentially the same services as CareGivers. *Id.* At least four former CareGivers employees became employees of Compass. Moreover, it appears that Skrypski's wife was a former CareGivers employee and now works for Compass. Bishop Decl. ¶¶5-9, Exs. 2-5.

CareGivers was founded in or about 2002 by Paul Bartoletti ("Bartoletti"). Bishop Decl. ¶¶11-12, Exs. 7-8. Bartoletti's daughter, Mia Bartoletti Haney ("Haney"), served as President of CareGivers from approximately 2008 to 2022, Skrypski's entire tenure of employment by CareGivers. *See* Bishop Decl. ¶13, Ex. 9. Given their positions at CareGivers, it was likely that Skrypski and Haney had extensive interactions and communications during that time frame.

During 2014, CareGivers was acquired by All Metro Health Care, which was owned by Nautic Partners, a private equity firm. Bishop Decl. ¶14, Ex. 10. In February 2016, All Metro Health Care and its subsidiaries, including CareGivers, was sold to One Equity Partners. Bishop Decl. ¶15, Ex. 11. In 2018, All Metro Health Care was renamed as Simplura Health Group ("Simplura"). Bishop Decl. ¶16, Ex. 12. In November 2020, Simplura was acquired by Providence Service Corporation ("Providence"). Providence is now known as ModivCare.

Haney was appointed COO at the Personal Care Division at ModivCare and held that position from January 2022 until September 2023. Bishop Decl. ¶13, Ex. 9. Haney is currently CEO of the Pennsylvania Homecare Association. Bishop Decl. ¶18, Ex. 13. Based on these facts,

Skrypski worked with Haney for approximately seven years, and thereafter Haney became a COO of ModivCare, a position she held at the start of the Class Period.

Skrypski's connection to Haney makes him atypical under Rule 23. *See*, *e.g.*, *Beck v. Status Game Corp.*, 1995 WL 422067, at *3-4 (S.D.N.Y. July 14, 1995) (proposed lead plaintiff did not have claims typical of other class members because he met with company insiders to discuss buying the defendant company's stock; movant denied he received inside information, but being subject to unique defenses made him atypical and would require time to rebut). Skrypski likely had insights into ModivCare's business, both from the fact that he had worked at CareGivers, which ModivCare acquired, and his communications with Haney, the COO of ModivCare's Personal Care Division. He may have been given tips by Haney or others from ModivCare who Skrypski knew from his time at CareGivers who became ModivCare employees or from former CareGivers' employees who were hired by Compass. Skrypski may have used these connections to determine when to buy and sell ModivCare stock, not relying strictly on public information, as the Class members did, making Skrypski atypical. *See Landry v. Price Waterhouse Chartered Accts.*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) (access to inside information made plaintiffs subject to unique defenses and improper representatives even if information was not relevant or relied on in connection with decision to purchase securities; fact that they will be subject to unique defenses renders their claims atypical).

While IFRRF cannot be certain about Skrypski's connections to Haney and whether he used information he gathered from former colleagues to trade in ModivCare stock, without being granted leave to take discovery, Skrypski's trading pattern in ModivCare stock raises suspicions about the reasons and timing of his trades and whether those trades were based on more than public information. As shown by the information Skrypski submitted about his trades, he did not begin

to purchase ModivCare stock until Haney became COO, raising the issue of whether he began purchasing it on her advice or even just based on their discussions, either of which would be disqualifying. *See*, *e.g.*, *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 314 (E.D. Va. 2007) (personal contact with corporate officers will render a plaintiff atypical even if questions existed as to whether inside information was obtained from the contact); *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989) (personal contact with corporate officers will render a plaintiff atypical to represent the class). He then frequently traded during the Class Period. At times, he bought and sold ModivCare stock on the same day. At other times, he bought or sold ModivCare stock on one day and then made an opposite trade just a few days later, casting doubt as to whether he was trading solely on public information. *See Masri v. Wakefield*, 106 F.R.D. 322, 325 (D. Colo. 1984) (plaintiff's unique investment strategy and potential defenses not applicable to other class members made him an inadequate class representative). He also invested a large sum of money in ModivCare stock with no information provided on the size of any of his other investments.

While Skrypski submitted a Declaration with his motion and claimed to have invested in securities for twenty years (*see* ECF No. 17-4, ¶2), he offered no explanation for his ModivCare trades, gave no information on what other stock he owned and traded, and gave no information on his overall portfolio and the relative size of his investment in ModivCare when compared to his overall investment portfolio. From appearances, it seems that ModivCare is likely a large share of his portfolio, which raises another issue as to whether his transactions were based solely on public information, the information on which the other Class members relied.

Given Skrypski's background and connection to Haney, and given that ModivCare is in the same industry that Skrypski has spent his career, and that he used to work at one of

ModivCare's subsidiaries, it seems likely that he had information as to ModivCare's business that other shareholders did not have. This special information renders him atypical and prevents him from being able to show that his claims are the same (or similar) to the other Class members. Accordingly, he does not satisfy Rule 23's typicality requirement and cannot serve as lead plaintiff.

**B.    Skrypski Cannot Meet the Rules 23 Adequacy Requirement and Cannot be Lead Plaintiff**

In addition to satisfying typicality, a lead plaintiff movant needs to demonstrate they will adequately represent the other members of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188-89 (10th Cir. 2002). Here, Skrypski cannot meet that requirement and accordingly, cannot serve as lead plaintiff.

While Skrypski contends he has investing experience and experience hiring and overseeing attorneys for business matters (*see* ECF No. 17-4, ¶2), he provides no details in support of these claims.[4] Skrypski may contend that submitting a declaration was not necessary given his financial interest, but the submission he had made raises additional issues. Once a submission to the Court is made, it needs to be complete without any omissions that may be regarded as an attempt to avoid disclosing information. *See*, *e.g.*, *Clifton v. Willis*, 2024 WL 1508832, at *3-5 (D. Colo. Mar. 5, 2024), *report and recommendation adopted,* 2024 WL 1508831 (D. Colo. Mar. 26, 2024).  (lead plaintiff applicant's attached documents failed to disclose past legal difficulties, that lack of candor rendered him inadequate despite largest financial interest).

First, his claimed investing experience is not detailed at all. Whether he was investing in other securities at the time he was investing in ModivCare stock is not provided nor the amounts of any other securities investments. Moreover, as stated, there is no explanation as to his pattern

---

[4] Moreover, although he claims experience hiring and overseeing attorneys, he does not state whether he has been involved in a complex litigation before, whether he has any experience with making legal decisions in litigation, or his resources to support what could be a lengthy litigation.

of trading of ModivCare stock and no information as to whether he trades in a similar manner in other securities and may be regarded as a day-trader, potentially disqualifying him for not making trading decisions based on public disclosures. While this aspect of Skrypski's trading also makes him atypical, the adequacy and typicality requirements frequently overlap. *See*, *e.g.*, *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000) (investor who engages in transactions beyond the scope of a typical investor may be subject to unique defenses and is not adequate); *In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000).

Second, Skrypski provides no information in his declaration about questions concerning his character given his involvement with law enforcement. In May 2017, Skrypski was stopped by law enforcement for suspicion of driving while under the influence of alcohol ("DUI"). Bishop Decl. ¶¶19-22, Exs. 14-16. Skrypski reportedly refused to take a chemical test and on June 9, 2017, the Pennsylvania Department of Transportation issued a written notice informing him that his driver's license had been suspended for the chemical test refusal. *Id.* Skrypski appealed that decision on the grounds that the suspension was unlawful. *Id.* He claimed that he was not in violation of the relevant criminal statute, his detention had been unlawful, the officer did not have reasonable grounds to believe he was operating a vehicle under the influence of alcohol, and that he was not warned that refusing to submit to the chemical test would result in a suspended license. *Id.* On October 30, 2017, Skrypski withdrew his appeal and the next hearing was deferred to May 2018.[5]

---

[5] No further records were found and no other information was available.

A second legal proceeding involving Skrypski was brought, relating to this (or another) DUI, which was filed in Luzerne County, Pennsylvania on July 25, 2017. Bishop Decl. ¶23. Additional charges for driving at an unsafe speed and disregarding a traffic lane (single) were also included in the case, brought as a criminal proceeding. *Id.* Additional information on the case was not available.[6]

While Skrypski did not have to volunteer the information he provided to the Court with his motion, once he submitted a declaration, it should have included all relevant information as to his qualifications for lead plaintiff and the omission of such information may have been an attempt to mislead the Court. In any event, at a minimum, these issues raise questions regarding Skrypski's candor and character, and raise doubts about his ability to function as a fiduciary for the other Class members.[7] *See*, *e.g.*, *In re Surebeam Corp. Sec. Litig.,* 2004 WL 5159061, at *7 (S.D. Cal., Jan. 5, 2004) ("On more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary.") (citing *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504-05 (S.D. Fla. 2002) (finding that two public citations for violation of the SEC's and NASD's rules rendered a proposed lead plaintiff inadequate given concerns about possible defenses and his moral character)); *see also Clifton*, 2024 WL 1508832, at *3-5 (court found that lead plaintiff movant's failure to disclose conviction raised questions about his honesty and trustworthiness, deemed crucial for a lead

---

[6] Based on information provided by an investigator, further research was attempted directly with the court in Luzerne County both by telephone and onsite records retrieval. Clerks were unable to locate electronic or physical case files for the case, and indicated that it had been expunged and destroyed.

[7] While IFRRF has been unable to obtain complete details about these incidents and the criminal proceeding materials have been expunged, they are an additional reason why limited discovery should be granted of Skrypski.

plaintiff, who acts as a fiduciary for the class). IFRRF as lead plaintiff poses none of these potential

questions or problems, each of which can be avoided if IFRRF is appointed lead plaintiff.

>    **C.    IFRRF Satisfies the PSLRA's Requirements and Is the Presumptive Lead Plaintiff**

IFRRF not only suffered the largest loss in ModivCare stock after Skrypski, it satisfies the

Rule 23 requirements, and is not subject to any issues that impair its typicality or adequacy, thereby

justifying its appointment as lead plaintiff. *See* ECF Nos. 19 at 3-5, 20-2 (IFRRF certification).[8] If

"the district court determines that the presumptive lead plaintiff does not meet the typicality or

adequacy requirement, it then must proceed to determine whether the plaintiff with the next lower

stake in the litigation has made a prima facie showing of typicality and adequacy." *In re*

*Cavanaugh*, 306 F.3d 726, 731 (9th Cir. 2002) ("Once it determines which plaintiff has the biggest

stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy

the typicality or adequacy requirements.").

IFRRF meets Rule 23's typicality requirement because its claims arise from the same

course of events as the claims of all other Class members and involve similar legal arguments to

prove the Defendants' liability, namely, they arose from IFRRF's purchase of publicly-traded

ModivCare common stock during the Class Period when Defendants' alleged material

misrepresentations and omissions improperly inflated the price of the securities. IFRRF purchased

its shares of ModivCare stock at inflated prices, and it incurred significant losses when the truth

was disclosed. *See* ECF No. 20-3. Accordingly, IFRRF is typical of the Class that it seeks to

represent.

---

[8] While the other two lead plaintiff movants have now filed Notices of Non-Opposition, even if the Court were to consider these motions, IFRRF still has the largest loss after Skrypski.

Likewise, IFRRF meets Rule 23's adequacy requirement because its interests are clearly aligned with the interests of the other members of the Class and it has no conflicts. In addition, IFRRF selected counsel with a demonstrated track record of success in prosecuting securities fraud cases and serving as lead counsel around the country. *See* ECF Nos. 19 at 5-6, 20-4 (AF&T resume).

Moreover, IFRRF – as a sophisticated institutional investor – is the preferred lead plaintiff candidate pursuant to the PSLRA. *See Cendant*, 264 F.3d at 273 ("Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members."); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) ("many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs").[9]

---

[9] *Gentiva*, 281 F.R.D. at 113 ("This preference has been determinative in other cases, even when an institutional investor has a slightly lower loss than another potential lead plaintiff.") (citing *Juliar v. SunOpta Inc.,* 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) ("This difference [of $30,000] is minimal and, in this case, does not overcome a presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs.") (citation omitted); *Nakamura v. BRF S.A.*, 2018 WL 3217412, at *2, 4-5 (S.D.N.Y. July 2, 2018) (court appointed an institutional investor as lead plaintiff over a group of individual investors, even though the institution's loss was nearly $130,000 smaller than the group's); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (court held that an institutional investor was "the more adequate and preferable" compared with a grouping of plaintiffs, despite having suffered "slightly lower" losses); *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) ("Under the PSLRA, institutional investors are considered preferred lead plaintiffs."); *see also Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *4 (D. Colo. 2024) (on approving a final settlement approval motion, "The Court also finds that Lead Plaintiff adequately represented the class. Lead Plaintiff is an institutional investor of the type favored by Congress when passing the PSLRA and has adequately represented the interests of the settlement class by closely monitoring and participating in this litigation from the outset through resolution."); *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 1387110, at *4 (D. Colo. Apr. 13, 2021) (same).

If Skrypski is deemed an inadequate lead plaintiff, IFRRF, as an institution and with a large loss, is the presumptive lead plaintiff. As shown above, Skrypski's motion creates too many doubts as to his typicality and adequacy and it should be denied. IFRRF's motion to be appointed lead plaintiff should be granted.

**D.    In The Alternative, IFRRF Should Be Allowed Limited Discovery From Skrypski**

The PSLRA provides that a class member may conduct discovery into the adequacy of a competing movant for lead plaintiff upon demonstrating a "reasonable basis" for a finding that the movant is incapable of adequately representing the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv). At minimum, given the concerns raised herein regarding Skrypski's typicality and adequacy, IFRRF should be afforded the opportunity to conduct discovery directed solely at whether Skrypski is an adequate lead plaintiff.

Because IFRRF has shown a reasonable basis for finding that Skrypski's "standing, typicality, adequacy or potentially unique defenses may render" Skryptski "incapable of adequately representing the class[,]" the Court should "allow limited discovery" into the presumptive lead plaintiff. *Prissert v. Emcore Corp.,* 2009 WL 10668530, at *4 (D.N.M. Sept. 29, 2009) (quoting 15 U.S.C. §78u-4(a)(3)(B)(iv)); *see also Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 990 (M.D. Tenn. 2016) ("allow[ing] 45 days of limited discovery into whether [a movant] will adequately represent the class and whether it is subject to any unique defenses"); *Fischler v. AmSouth Bancorporation*, 1997 WL 118429, at *3 (M.D. Fla. Feb. 6, 1997) ("uncertainty" or "unanswered questions" about a putative lead plaintiff's ability to properly represent the class are sufficient to trigger the PSLRA's lead plaintiff discovery provision).

If Skryptski's motion is not denied, IFRRF should be permitted to take limited discovery regarding, *inter alia*, Skrypski's connection to ModivCare's former COO, his trading patterns, his

12

non-public insight into the industry, and his encounters with law enforcement. Courts have granted limited discovery to lead plaintiff movants where "there exists a potential that" movant "is in a unique position that would defeat typicality and adequacy[,]" because "it would be preferable to engage now in a fuller examination of" the Rule 23 requirements before entrusting a case to the stewardship of a lead plaintiff movant. *Broadfoot v. Barrick Gold Corp.*, 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017). A grant of limited discovery is appropriate in this instance.

**CONCLUSION**

For the reasons discussed herein and in its moving papers (ECF Nos. 19-20), IFRRF respectfully requests that the Court: appoint it as Lead Plaintiff; approve the selection of AF&T as Lead Counsel for the Class; and deny the competing motions, or in the alternative, IFRRF should be allowed to take limited discovery of Skrypski.

Dated: April 21, 2025                 Respectfully submitted,

**ABRAHAM, FRUCHTER
& TWERSKY, LLP**

By:  /s/ *Patrice L. Bishop*
Patrice L. Bishop
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Tel:    (310) 279-5125
Email:  pbishop@aftlaw.com

**ABRAHAM, FRUCHTER
& TWERSKY, LLP**
Mitchell M.Z. Twersky
Atara Hirsch
Lawrence D. Levit
450 Seventh Avenue, 38th Floor
New York, NY  10123
Tel:    (212) 279-5050
Fax:    (212) 279-3655
Email:  mtwersky@aftlaw.com
          ahirsch@aftlaw.com
          llevit@aftlaw.com

*Proposed Lead Counsel for Proposed
Lead Plaintiff IFRRF*

13