# EXHIBIT 15

# IN THE COURT OF COMMON PLEAS OF LUZERNE COUNTY
## COMMONWEALTH OF PENNSYLVANIA

### CIVIL

| | |
|---|---|
| Christopher B. Skrypski,<br>                    Plaintiff<br><br>v.<br><br>Commonwealth of Pennsylvania,<br>Department of Transportation,<br>Bureau of Driver Licensing,<br>                    Defendant | Docket No. 7608-2017 |



## PLAINTIFF'S BRIEF IN SUPPORT

### FACTUAL AND PROCEDURAL HISTORY

The Pennsylvania Department of Transportation ("PennDOT") sent a notice dated June 9, 2017 to Christopher B. Skrypski ("Petitioner") that stated Petitioner's driving privileges would be suspended for a period of one (1) year pursuant to 75 Pa.C.S. § 1547. PennDOT alleged in this notice that Petitioner refused to submit to a chemical test of his breath on May 20, 2017. Thereafter, Petitioner filed a timely appeal from the suspension of operating privileges in the Luzerne County Court of Common Pleas.

It has not yet been established what warnings, if any, that Petitioner was read or informed of prior to his refusal to submit to chemical testing of his breath. It is believed that Petitioner was read the warnings contained on PennDOT's DL-26B form or warnings that did not comply with 75 Pa.C.S. § 1547(b)(2).

### ISSUES PRESENTED

Whether Petitioner's license suspension appeal should be sustained since he was not read the warnings that are required by 75 Pa.C.S. § 1547(b)(2)?

**Suggested Answer: Yes**

## ARGUMENT

### A. *Statutory Interpretation Invalidates the DL-26B*

The Pennsylvania Vehicle Code "sets forth requirements that **must be met before PennDOT can suspend a person's operating privilege for refusing a chemical test.**" *Pennsylvania Dep't of Transp., Bureau of Driver Licensing v. Weaver*, 912 A.2d 259, 262 (2006) (emphasis added) (citing 75 Pa.C.S. § 1547(b)(1), (2)). 75 Pa.C.S. § 1547(b)(1), (2) provides as follows

> (b) Suspension for refusal.—
> (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person .
> . .
> (2) *It shall be the duty of the police officer to inform the person that:*
> *(i) The person's operating privilege will be suspended upon refusal to submit to chemical testing; and*
> *(ii) Upon conviction, plea or adjudication of delinquency for violating section 3802(a), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).*

75 Pa. C.S. § 1547(b)(1), (2) (emphasis added).

It is a matter of statutory interpretation for this Court to determine what warnings 75 Pa.C.S. § 1547 requires and whether the DL-26B form provides the required warnings. When interpreting statutes, courts are guided by the Pennsylvania Statutory Construction Act of 1972, 1 Pa.C.S. § 1501, *et seq.* Following the direction of that act, the Pennsylvania Supreme Court has held that "[t]he object of statutory interpretation is to determine the intent of the General Assembly." *Weaver*, 912 A.2d at 264 (citing 1 Pa.C.S. 1921(a)). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Id.* (quoting *Hannaberry HVAC v. Workers' Compensation Appeal Bd.*, 834 A.2d 524, 531 (2003)).

2

Additionally, when the words of a statute are unambiguous, the unambiguous language of the statute cannot "be disregarded under the pretext of pursuing [the statute's] spirit." 1 Pa.C.S. § 1921(b). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). "[T]he statute's plain language generally provides the best indication of legislative intent." *Commonwealth v. McClintic*, 909 A.2d 1241, 1245 (Pa. 2006) (citing *Commonwealth v. Conklin*, 897 A.2d 1168, 1175 (Pa. 2006); *Commonwealth v. Gilmour Mfg. Co.*, 822 A.2d 676, 679 (Pa. 2003)).

The Supreme Court of Pennsylvania has interpreted 75 Pa.C.S. § 1547 previously when the court examined if the original DL-26 form complied with the terms of 75 Pa.C.S. § 1547 and held that the language of 75 Pa.C.S. § 1547 is clear and unambiguous. *Weaver*, 912 A.2d at 264 ("The words of [75 Pa.C.S. § 1547] are clear and free from all ambiguity; thus, we will glean the legislative intent from those words."). In *Weaver*, the Supreme Court held that the DL-26 form complied with the statutory requirements of 75 Pa.C.S. § 1547 and a police officer only had to inform a person that they would be subject to the penalties of 75 Pa.C.S. § 3804(c) and that their license would be suspended for one (1) year rather than the officer informing a person of the specific increased penalties located in 75 Pa.C.S. § 3804(c) that applied to repeat offenders as the appellant argued. *Id.* Since the Supreme Court of Pennsylvania has held that the language of 75 Pa.C.S. § 1547 is clear and unambiguous, this Court must look for the legislative intent in the words of 75 Pa.C.S. § 1547 and cannot look elsewhere to interpret the statute 75 Pa.C.S. § 1547(b)(2) states that:

(2) It **shall be the duty of the police officer** to inform the person that:
(i) The person's operating privilege will be suspended upon refusal to submit to chemical testing; **and**
(ii) Upon conviction, plea or adjudication of delinquency for violating section 3802(a), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547(b)(2) (emphasis added). The language above unambiguously shows that it was the General Assembly's intent to have the police officer inform a person that (1) their driving privileges will be suspended and (2) that the person will be subject to the increased penalties in 75 Pa.C.S. § 3804(c) if they are convicted under 75 Pa.C.S. § 3802(a). The Pennsylvania Supreme Court has held, in the context of statutory interpretation, that "[b]y definition, 'shall' is mandatory." *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997) (citing *Coretsky v. Bd. of Commissioners*, 555 A.2d 72, 74 (Pa. 1989)).

Since the General Assembly chose the word shall, it shows that their intent was to mandate that police officers inform suspects that their license will be suspended and that they could be subject to the increased penalties of 75 Pa.C.S. § 3804(c) if they refuse to submit to a chemical test. The General Assembly did not give police officers the option to inform people of one or the other at their own discretion. If that were the case, the General Assembly would have used the word "may" instead of "shall" or "or" instead of "and" in 75 Pa.C.S. § 1547(b)(2). *See Krassnoski v. Rosey*, 684 A.2d 635, 638 (Pa. Super. 1996) (holding that the word "may" does not make a result mandatory but instead provides for the use of discretion). Since the plain and unambiguous language of the 75 Pa.C.S. § 1547(b)(2) mandates that police officers inform individuals that their license will be suspended for one year and they could be subject to the increased penalties of 75 Pa.C.S. § 3804(c) prior to a chemical test refusal, PennDOT's DL-26B is invalid because it does

4

not comply with the clear and unambiguous terms of 75 Pa.C.S. § 1547(b)(2). Additionally, any warnings given by police officers that do not include that a person's license will be suspended for one year and that they will be subject to the criminal penalties in 75 Pa.C.S. § 3804(c) if they refuse a chemical test are plainly invalid as they do not comply with black letter law.

### B. *PennDOT Acted Beyond the Scope of its Authority*

PennDOT amended the original DL-26 to comply with the United States Supreme Court's decision in *Birchfield v. North Dakota*. However, in doing so they have acted beyond the scope of their authority and power. PennDOT "is charged with the duty of administering the provisions of [the Vehicle Code] and of all laws the administration of which is now or hereafter vested in [PennDOT]." 75 Pa.C.S. § 6102. PennDOT is also given the power to, among other things, promulgate rules and regulations to carry out its duties, provide forms for driver's licenses and other vehicle related documents, and to remove dead deer from the side of a state highway. *See e.g.*, 75 Pa.C.S. §§ 6103, 6104, and 6119. However, the General Assembly has never provided PennDOT with the authority to disregard a law enacted by the General Assembly or to advise law enforcement officers to disregard a statute enacted by the General Assembly. *See generally*, 75 Pa.C.S. § 101, *et seq.* In fact, just the opposite is true; the General Assembly provided that PennDOT must administer the provisions of the Vehicle Code, not alter or ignore them. *See* 75 Pa.C.S. § 6102.

The General Assembly passed 75 Pa.C.S. § 1547(b)(2) and mandated that police officers inform licensees of very specific consequences that will occur if the licensee refused to submit to chemical testing. Nonetheless, PennDOT ignored the General

5

Assembly's mandate in 75 Pa.C.S. § 1547(b)(2) and unilaterally informed police officers that they need not comply with the laws passed by the General Assembly by issuing the DL-26B. This is not within the scope of PennDOT's powers. *See* 75 Pa.C.S. § 101, *et seq.* PennDOT was given its power and authority by the General Assembly and is bound by the laws passed by the General Assembly. PennDOT simply does not have the authority to disregard black letter law based on what it determines to be the correct course of action. Therefore, however benign PennDOT's goals were when it created and used the DL-26B, it simply did not have the power or authority to do so. PennDOT's judgment and approval cannot overrule clear and unambiguous statutes passed by the General Assembly.[1]

### C. *The DL-26B Produces Absurd Results*

The amended DL-26B form also disregards the aspects of the *Birchfield* decision that hold that breath tests are not unconstitutional warrantless searches and seizures under the Fourth Amendment. *Birchfield*, 136 S.Ct. 2160, 2184 ("Having assessed the effect of BAC tests on privacy interests and the need for such tests, we conclude that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving.

---

[1] Petitioner recognizes that there is a discrepancy in the Vehicle Code as it existed on the date of refusal. If police officers read licensee's the DL-26, any blood evidence should be suppressed in the criminal DUI proceeding pursuant to *Birchfield* and *Evans*. If police officers read licensee's the DL-26B, the licensee cannot have their license suspended in the civil license suspension proceeding because the police officer did not comply with their duties under 75 Pa.C.S. § 1547(b)(2). However, it is not the duty of PennDOT or this Court to resolve this discrepancy because resolving this discrepancy would effectively enact a new implied consent law or amend the current implied consent law. The General Assembly is the only body with the power and authority to amend or enact a new implied consent law. Therefore, the General Assembly must amend the Vehicle Code to make any fixes it deems appropriate. Notably, no court has held 75 Pa.C.S. § 1547 to be unconstitutional and the General Assembly passed a law amending the implied consent law on July 20, 2017. *See infra.*

Additionally, Petitioner was asked to submit to a breath test in this case. Therefore, the warnings on the original DL-26 would have been valid and Petitioner could be subject to the increased criminal penalties in 75 Pa.C.S. § 3804(c). Therefore, the importance of the warnings in 75 Pa.C.S. § 1547(b)(2) are extremely high in this case and the police officer must have informed Petitioner of them in order for his refusal to be voluntary, knowing, and conscious.

The impact of breath tests on privacy is slight, and the need for BAC testing is great."). It is true that if police read the original DL-26 form to suspects prior to a blood test, the evidence from the blood test should be suppressed by a court. However, it is also true that if a suspect is read the original DL-26 form before being asked to submit to a breath test, evidence from that breath test will not be suppressed. Therefore, if a person refuses a breath test, they can still be subject to the more stringent penalties of § 3804(c) if convicted under § 3802(a)(1). In this scenario, the DL-26B form, or warnings that do not strictly comply with 75 Pa.C.S. § 1547(b)(2), would clearly not inform a suspect of the consequences that would result from a refusal to submit to a breath test. This absurd result illustrates the importance for police to comply with the specific provisions of 75 Pa.C.S. § 1547(b)(2) and that the DL-26B form is not an appropriate or well thought out response to the *Birchfield* decision. Notably, Petitioner was asked to submit to a chemical test of his breath in this case and therefore, if he were not informed of all of the warnings contained in 75 Pa.C.S. § 1547(b)(2), his refusal could not have been voluntary, knowing, and conscious.

The General Assembly also recognized this absurd result and has recently moved to remedy it. On July 20, 2017, the General Assembly passed a bill that amended 75 Pa.C.S. § 1547, among other things. 2017 Pa.Legis.Serv.Act 2017-30 (S.B. 553). The relevant amended language of 75 Pa.C.S. § 1547(b)(2) provides

> (2) It shall be the duty of the police officer to inform the person that:
> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing *and the person will be subject to a restoration fee of up to $2,000*; and
> (ii) if the person refuses to submit to chemical *breath* testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

2017 Pa.Legis.Serv.Act 2017-30 (S.B. 553) (emphasis added to illustrate amended language).[2] This amendment should remedy some of the absurdity produced by the DL-26B form since it requires officers to warn individuals that they will be subject to increased criminal penalties if they are asked to submit to a chemical test of breath and refuse. This amendment buttresses Petitioner's contentions since it would require police officers to provide the warnings that Petitioner is asserting must be read in order for a refusal of chemical testing to be voluntary, knowing, and conscious.

In this case, since Petitioner was asked to submit to a chemical test of his breath, the police officer had to inform him that he would be subject to the increased criminal penalties in 75 Pa.C.S. § 3804(c) in order for his refusal of the breath test to be voluntary, knowing, and conscious. The law requires that an individual be specifically informed that their license will be suspended for one year and that they will be subject to increased criminal penalties if they refuse a chemical test of their blood, breath, or urine. 75 Pa.C.S. § 1547(b)(2). If an individual, particularly and individual being asked to submit to a breath test, is not informed that they will be subject to increased criminal penalties for refusing the chemical test, their refusal cannot be voluntary, knowing, or conscious since the police purposefully neglected to inform the individual about the harshest consequences of refusing the chemical test. If Petitioner was not specifically informed that he would be subject to increased criminal penalties for refusing a chemical test of his breath as required by the Vehicle Code, this Court should sustain Petitioner's appeal and overrule PennDOT's suspension of his driving privileges because his refusal was not voluntary, knowing, and conscious.

---

[2] Petitioner recognizes that the version of 75 Pa.C.S. § 1547 in place at the time of his refusal governs this action.

8

D. *Garlick is a Misapplication of the Law and Unpersuasive*

*Garlick v. Commonwealth of Pennsylvania, Dep't of Transportation*, No. 12267–2016 is an unpublished opinion from the Erie County Court of Common Pleas that is often relied upon by PennDOT in license suspension appeal cases. In that opinion, the Erie County Court of Common Pleas holds that the warnings contained in the DL-26B form are proper because the United States Supreme Court decision in *Birchfield v. North Dakota* made it unconstitutional to threaten an individual with criminal penalties for refusing an unconstitutional search. However, this ruling misapplies the law and should not be considered persuasive by this Court. Additionally, this ruling has been appealed to the Commonwealth Court of Pennsylvania, but the Commonwealth Court has not issued a decision on the matter yet. *Garlick v. Commonwealth of Pennsylvania, Dep't of Transportation, Bureau of Driver Licensing*, 48 CD 2017.

The Erie County Court of Common Pleas *Garlick* opinion is unpersuasive and a misapplication of the law because it conflates civil license suspension proceedings and criminal driving under the influence proceedings. In *Birchfield v. North Dakota*, the constitutionality of implied consent laws was not challenged; instead, the constitutionality of warrantless blood and breath tests was challenged. *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2185 (2016). Specifically, in regard to implied consent laws, the Supreme Court stated the following:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. **Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.**

*Id.* (emphasis added). Additionally, the Pennsylvania Superior Court's ruling in *Commonwealth v. Evans* similarly only applies in criminal driving under the influence

9

proceedings and does not affect the validity of the civil implied consent laws. *Commonwealth v. Evans*, 153 A.3d 323, 331 (Pa. Super. 2016).

The Commonwealth Court of Pennsylvania has recently ruled on the issue of whether *Birchfield* and its progeny effects civil license suspension proceedings. In *Boseman*, the Commonwealth Court held that a license suspension resulting from a refusal to submit to chemical testing is a separate civil proceeding from the criminal proceedings arising out of the same set of facts and that it is not a crime to refuse a chemical test under Pennsylvania's implied consent laws. *Boseman v. Commonwealth of Pennsylvania, Dep't of Transportation, Bureau of Driver Licensing*, No. 746 C.D. 2016, 2017 WL 1033770, at *8 (Pa. Commw. Ct. Mar. 17, 2017) ("To begin, we emphasize that a license suspension stemming from a refusal to submit to chemical testing is a separate administrative proceeding from a criminal DUI proceeding arising out of the same incident. It is not a crime to refuse chemical testing under Pennsylvania's Implied Consent Law."). Indeed, in *Boseman*, PennDOT argued as follows

> DOT contends Birchfield is distinguishable because it is not a crime to refuse chemical testing under Pennsylvania's Implied Consent Law . . . [A] license suspension stemming from a refusal to submit to chemical testing is a separate administrative proceeding. *Bashore v. Dep't of Transp., Bureau of Driver Licensing*, 27 A.3d 272 (Pa. Cmwlth. 2011). Accordingly, the lawfulness of a Pennsylvania DUI arrest is irrelevant to a determination of whether the licensee's operating privileges were properly suspended under the civil Implied Consent Law. In addition, the U.S. Supreme Court held in Pennsylvania Board of Probation and Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998), that evidence obtained illegally in a search did not have to be excluded in an administrative proceeding. As such, the U.S. Supreme Court has not extended the federal exclusionary rule to proceedings other than criminal trials. *Id.*

*Id.* The *Boseman* Court agreed with PennDOT's argument and held that

> Birchfield addressed the constitutionality of a State statute that made it a *crime* to refuse a warrantless blood test after being arrested for DUI. **In**

10

**short, although Birchfield may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed, such is not the case before us in this civil license suspension appeal under the Implied Consent Law.** Consequently, Licensee's Fourth Amendment challenge to the Implied Consent Law fails.

*Id.,* at *9 (bold emphasis added) (italicized emphasis in original). Therefore, the Commonwealth Court held that the original DL-26 form that contained the warning about the increased penalties in § 3804(c) was valid for the purpose of administrative license suspension proceedings because it complied with Pennsylvania law even after *Birchfield* was released. *See Id.*

In this case, if Petitioner was read the DL-26B or other warnings that did not include the increased criminal penalties for a refusal, PennDOT will have to argue that *Birchfield* and *Evans* apply to this civil proceeding and therefore, the DL-26B, or other warnings that do not include criminal penalties, comply with the law. However, this is completely contrary to PennDOT's argument in *Boseman* where it insisted, and the Commonwealth Court agreed, that an individual should have their driver's license suspended because *Birchfield* and its progeny did not apply in the civil license suspension context. Put simply, PennDOT will want to have its cake and eat it too. However, these contrary positions do not comport with logic and case law. Logic dictates that either *Birchfield* and its progeny apply in the civil license suspension proceedings or they do not; the Commonwealth Court has ruled, based on PennDOT's argument, that *Birchfield* and its progeny do not apply in the civil license suspension context. Therefore, *Birchfield* and its progeny do not apply in a civil license suspension hearing and do not affect the implied consent laws as they relate to license suspensions for refusals in any way.

11

Since the Erie County *Garlick* opinion rests solely on the fact that *Birchfield* and its progeny apply in the civil license suspension context, its holding is unpersuasive and a misapplication of the law.[3] Therefore, this Court should disregard the *Garlick* opinion when reaching its decision.

## CONCLUSION

PennDOT's DL-26B form and any warnings that do not inform an individual that they will be subject to increased criminal penalties and a one year license suspension if they refuse chemical testing are invalid because they fail to comply with 75 Pa.C.S. § 1547(b)(2). Furthermore, PennDOT does not have the authority to disregard and advise law enforcement officers to disregard laws duly enacted by the General Assembly, as the DL-26B form does, even if the amendment to the DL-26 form was for the purpose of attempting to adapt to changes in the state of the law; the General Assembly must change the law. The General Assembly has also changed the law as of July 20, 2017 in a way that supports Petitioner's position in that the General Assembly confirms that police officers must warn individuals that they will be subject to increased criminal penalties if they refuse a breath test.

Any reliance on the *Garlick* decision would be misplaced as the *Garlick* opinion is currently on appeal to the Commonwealth Court, it is an unpublished opinion, and is an opinion from the Erie County Court of Common Pleas, which is not binding on this Court.

---

[3] To be sure, the *Garlick* opinion does rest upon the determination that *Birchfield* and *Evans* apply in civil license suspension proceedings. *Garlick*, No. 12267-2016, at *7–8 ("Although the statutory language of 75 Pa.C.S. § 1547(b)(2) requires a police officer to inform a licensee that refusal would result in both civil license suspension as well as criminal penalties, the current state of case law in the United States and Pennsylvania through both *Birchfield* and *Evans* clearly indicate otherwise."). Notably, the Commonwealth Court's decision in *Boseman* was released after the Erie County Court of Common Pleas released the *Garlick* decision, which explains why the *Garlick* opinion does not discuss *Boseman* and reached the conclusion that *Birchfield* and its progeny applied in the civil license suspension context. Therefore, the subsequent ruling in *Boseman* calls the reasoning of the *Garlick* opinion into serious doubt.

12

Additionally, the *Garlick* opinion is based upon *Birchfield* and its progeny applying in civil license suspension proceedings and was written before the Commonwealth Court decided *Boseman,* where the Commonwealth Court agreed with PennDOT's argument that *Birchfield* and its progeny do not apply in the context of the civil license suspension proceedings. Since *Birchfield* and its progeny do not apply in civil license suspension proceedings, *Garlick* was implicitly overruled and is not good law.

Based on the foregoing, if the officer in this case did not comply with the clear and unambiguous language of 75 Pa.C.S. § 1547(b)(2) by informing Petitioner that he would have his license suspended for one year and be subject to increased criminal penalties for refusing a breath test, Petitioner's appeal of his license suspension should be sustained.

Respectfully Submitted,

Leonard Gryskewicz, Jr.
PA Bar Number: 321467
Attorney for Plaintiff

LAMPMAN LAW
2 Public Square
Wilkes-Barre, PA 18701
570-371-3737

13