**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**


Civil Action No. 1:25-cv-00306-GPG-KAS


DINESH KALERA, Individually and on
Behalf of All Other Similarly Situated,

                    Plaintiff,

v.

MODIVCARE, INC., L. HEATH
SAMPSON, KENNETH SHEPARD, and
BARBARA K. GUTIERREZ,

                    Defendants.


---

**MEMORANDUM OF LAW OF IRVING FIREMEN'S RELIEF AND RETIREMENT
FUND REPLY IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF COUNSEL**

---

Irving Firemen's Relief and Retirement Fund ("IFRRF"), by its counsel, respectfully submits this reply memorandum of law in support of its motion for appointment as Lead Plaintiff and approval of its selection of Abraham, Fruchter & Twersky, LLP ("AF&T") as Lead Counsel for the putative class and in reply to the competing motion filed in this action (the "Action").[1]

## **INTRODUCTION**

There are two pending competing motions filed by putative class members seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The movants are: (1) IFRRF and (2) Christopher B. Skrypski ("Skrypski"). *See* ECF Nos. 16-17, 19-20, 32-36.

Pursuant to the PSLRA, this Court is to appoint the movant who is most capable of adequately representing the interests of the putative class. 15 U.S.C. §78u-4(a)(3)(B)(i). Here, that movant is IFRRF.

For the reasons previously detailed by IFRRF (*see* ECF Nos. 35-36), serious concerns exist regarding whether Skrypski is able to satisfy the Rule 23 requirements of typicality and adequacy which must be met for Skrypski to be appointed as lead plaintiff. *See* 15 U.S.C. § 78-u4(a)(3)(B)(iii)(I)(cc).[2] Indeed, Skrypski's Opposition adds no meaningful information regarding his adequacy or typicality, stating only that he "does not have any interests adverse to the class and, as demonstrated in his declaration accompanying his motion[.]" ECF No. 34 ("Skrypski Opp.") at 2.

---

[1] Unless stated otherwise, capitalized terms have the same meaning as defined in IFRRF's lead plaintiff opening memorandum (ECF No. 19) or in the complaint (ECF No. 1).

[2] At a minimum, these concerns about Skrypski support IFRRF's request for discovery. *See* ECF No. 35-36.

In contrast, there are no concerns regarding IFRRF's ability to satisfy the requirements of Rule 23, with IFRRF having a financial interest in the Action and being an experienced institutional investor which oversees hundreds of millions of dollars in investments.

Here, where there are serious questions about whether the movant with the largest loss can satisfy the Rule 23 requirements, a movant with the second largest losses that is an institution and does not pose any Rule 23 issues can and should be appointed Lead Plaintiff. As such, IFRFF respectfully requests this Court grant IFRRF's motion (ECF No. 19-20) and deny Skrypski's Motion (ECF Nos. 19-20).

## **ARGUMENT**

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). The PSLRA provides that the movant with the largest financial interest in the relief sought by the class is the presumptive most adequate plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii). However, that movant must also satisfy the Rule 23 typicality and adequacy requirements. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).

Because there are serious concerns as to whether Skrypski can satisfy Rule 23, he is not the presumptive most adequate plaintiff. IFRRF, as the movant with the next largest loss which also satisfies the Rule 23 requirements, should be deemed the presumptive most adequate plaintiff and therefore be appointed Lead Plaintiff. Alternatively, and as permittable under the PSLRA, IFRRF should be granted limited discovery to further examine Skrypski's typicality and adequacy. Finally, Skrypski's effort to challenge IFRRF as a "net seller" (*see* Skrypski Opp. at 9-10, n.1) has no merit, as IFRRF did not profit from any sales but incurred damages as the other similar Class

members. Moreover, being a net seller does not impact IFRRF's typicality and adequacy under

Rule 23. IFRRF should be appointed lead plaintiff.

> **A.      IFRRF Satisfies the PSLRA's Requirements, Is the Presumptive Lead Plaintiff, and Should be Appointed Lead Plaintiff**

As outlined in IFRRF's prior filings (*see* ECF Nos. 19-20, 35-36), IFRRF not only suffered

the largest loss in ModivCare stock after Skrypski, it satisfies the Rule 23 requirements, and is not

subject to any issues that impair its typicality or adequacy, thereby justifying its appointment as

lead plaintiff. *See* ECF Nos. 19 at 3-5, 20-2.

Moreover, IFRRF – as a sophisticated institutional investor – is the preferred lead plaintiff

candidate pursuant to the PSLRA. *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir.

2001); *Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *4 (D.

Colo. 2024) ("Lead Plaintiff is an institutional investor of the type favored by Congress when

passing the PSLRA . . ..");  *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,

2021 WL 1387110, at *4 (D. Colo. Apr. 13, 2021) (same).

Information regarding IFRRF and its status as an institutional investor is readily available

on the internet.[3] That information includes its purpose, plan documents, actuarial and financial

information, and governance, including the identity of each of its Board of Trustees' seven

members. *Id.*

"The purpose of the Firemen's Retirement Fund Board is to ensure that funds are properly

dispersed to retired firefighters." *See* https://www.cityofirving.org/278/Firemens-Relief-

Retirement-Fund. Its "governance is provided by state statute under Vernon's Civil Statutes Article

6243e, also known as the Texas Local Fire Fighter Retirement Act (TLFFRA) and by the Texas

---

[3] *See*, *e.g.*, https://www.irvingfirepension.com/Home.aspx; https://www.cityofirving.org/278/Firemens-Relief-Retirement-Fund; https://www.cityofirving.org/3121/Irving-Firemens-Relief-and-Retirement-Fu.

Government Code." *Id.* "Per statute, the Board must meet monthly to conduct business." *Id.* IFRRF's agendas for this year, and the prior six years, are publicly available (*id.*), along with its Board minutes for both 2024 and 2025. *See* https://www.irvingfirepension.com /Pub_Agendas.aspx. Notably, as of 2024, IFRRF oversaw over $260 million in assets. https://www.cityofirving.org/3121/Irving-Firemens-Relief-and-Retirement-Fu.

**B.    Alternatively, IFRRF Should Be Allowed Limited Discovery from Skrypski**

For the reasons detailed in the Memorandum of Law of Irving Firemen's Relief and Retirement Fund in Further Support for Motion for Appointment as Lead Plaintiff and Approval of Counsel and in Opposition to Competing Motion (*see* ECF Nos. 35-36, "IFRRF's Opposition"), IFRRF should be allowed limited discovery from Skrypski. As detailed therein, a "reasonable basis" exists to grant discovery on the issue of whether Skrypski is incapable of adequately representing the Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv).

Furthermore, to the extent that Skrypski replies to IFRRF's Opposition with additional information and facts which he claims support his typicality and adequacy required under the PSLRA and Rule 23 for appointment as lead plaintiff, discovery should also be allowed so that IFRRF can properly investigate any such additional information and/or facts. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv); *see also Applestein v. Medivation Inc*, No. C 10-00998 MHP, 2010 WL 3749406, at \*5 (N.D. Cal. Sept. 20, 2010) (granting sixty days for an opposing lead plaintiff movant to take a deposition and/or issue written discovery because the court harbored "some concerns" about the movants' "transparency and its trading practices"). At minimum, IFRRF should be afforded the opportunity to conduct discovery directed at whether Skrypski is an adequate and/or typical member of the Class.

C.      **Skrypski's Footnoted Argument Regarding IFRRF's Status as a "Net Seller" is a Red Herring, as it Incurred a Substantial Loss from Its ModivCare Stock Purchases, and Its Sales During the Class Period Do Not Impact IFRRF Status as a Typical and Adequate Class Member**

Skrypski's argument that IFRRF is a "net seller" (*see* Skrypski Opp. at 9-10, n.1) is without merit because it does not impact this Court's analysis regarding IFRRF's typicality and adequacy under Rule 23. IFRRF has a substantial financial interest in this litigation, faces no unique defenses, and should be appointed lead plaintiff.

*Foley v. Transocean Ltd.*, 272 F.R.D. 126, 132 (S.D.N.Y. 2011), is directly on point. The *Foley* court found that while the movant was a "net seller," all of that movant's "shares were sold after partial corrective disclosures." *Id.* at 132.  As a result, the court found that it saw "no reason why a net seller who sold all of his shares after the fraud began to be exposed, and was thus legally harmed by the fraud in all of its sales, could not be an adequate lead plaintiff. In fact, such trading behavior is likely typical of most members of the class, many of whom undoubtedly began selling their shares after the [alleged corrective disclosures]." *Id.*

The same is true here regarding IFRRF. While the last day of the Class Period is September 15, 2024 (*see* ECF No. 1 at ¶1), the Company made its primary corrective disclosure on September 12, 2024, before market hours. *See* ECF No. 1 at ¶¶1, 35-36. On that day – the only day IFRRF sold any of its shares during the Class Period – ModivCare's stock price fell "nearly 59%[.]" *Id.* at ¶36. IFRRF incurred substantial losses in its ModivCare stock when it sold those shares. It did not profit from any Class Period sales.[4] Therefore, there is no reason to find IFRRF atypical or

---

[4] IFRRF purchased 1,162 shares of ModivCare stock prior to the start of the Class Period at prices that were at least approximately six times the price it sold those shares. Prior to the start of the Class Period, IFRRF sold 90 of the shares it had purchased, leaving it with a net of 1,072 shares at the start of the Class Period.

IFRRF sold all the ModivCare shares it owned, including those it purchased prior to the start of the Class Period on September 12, 2024, for $12.4226 per share, a price substantially less than the price it paid for each of its shares, clearly resulting in a net loss, whether the shares were purchased

inadequate as it did not sell any shares during the Class Period before a curative disclosure and

thus could not profit from the fraud and should be appointed Lead Plaintiff.[5]

---

within or prior to the Class Period. *See* ECF No. 20-2, Bishop Decl. ¶¶2-6, Exs. 17-18. Of the 2,122 shares it purchased both prior to and during the Class Period, only 90 common shares were sold for a profit prior to the Class Period. Skrypski neither provides evidence that IFRRF profited from its pre-Class Period ModivCare stock purchases nor that it is subject to any unique defenses separate from the rest of the Class because none exist.

[5] *See also In re BP P.L.C. Sec. Litig.,* 2013 WL 6388408, at *6-9 (S.D. Tex. Dec. 6, 2013) (rejecting challenge to plaintiff's typicality due to its "net seller" status).

None of the case law cited by Skrypski is dispositive. The alleged "net seller" lead plaintiff movants in *Deering v. Galena Biopharma, Inc.,* 2014 WL 4954398 (D. Or. 2014), "excised more than two thirds of the class period alleged in several of the complaints in order to serve [their] purposes[,]"and later "acknowledged that under the longer class period" it would possess a smaller financial interest in the outcome than that claimed by" the competing movant. *Id.* at *11. As a result, the *Galena* court found the competing movant had the "largest financial interest" under the operative class period. *Id.* In contrast, IFRRF has evaluated its losses using the Class Period outlined in the Complaint and given that it only made two sales – one of only 90 shares prior to the Class Period and the alleged fraud, and the remaining 2,112 shares after the corrective disclosure – it incurred a substantial loss on all the shares it sold on September 12, 2024. *See* ECF Nos. 1, 20-2, 20-3.

The *In re Bausch & Lomb Inc. Sec. Litig.,* 244 F.R.D. 169 (W.D.N.Y. 2007), court found that while "[a]t first glance, it would appear that Detroit Police & Fire has the greater financial interest in [the] litigation[,]" "[t]hat analysis is incomplete, however, because it fails to properly account for its purchases and sales of debt securities during the Class Period." *Id.* at 173. The *Bausch* court then found that the movant had "sold more bonds than it purchased and generated more proceeds than it spent during the Class Period." *Id.* As a result, the court found the movant both a "net gainer" and "net seller," and "[i]f nothing else, its status as a net gainer may 'subject it to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Id.* at 173-74 (cleaned up), *citing* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). The same movant, Policemen and Firemen Retirement System of the City of Detroit, was also removed from consideration for lead plaintiff in *Weisz v. Calpine Corp.,* 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002), because the Court found that "may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price." *Id.* at *7. The same is true for the alleged "net seller" movant in *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943 (N.D. Ill. 2001), where it was shown that movant actually "derived a *net gain* of almost $300,000[.]" *Id.* at 945. In contrast, IFRRF absolutely did not profit from the sale of pre-Class Period purchases. *See* Bishop Decl. ¶¶2-6, Exs. 17-18. While the *In re Mills Corp. Sec. Litig.,* 2006 WL 2035391 (E.D. Va. 2006), court acknowledged that "Courts generally reject a party's motion for lead plaintiff if the party is a net seller of shares during the class period[,] the reason it declined to appoint the alleged "net seller" was because a competing movant had "the greatest financial interest in the class action." *Id.* at *3.

## CONCLUSION

For the reasons discussed herein and in its moving papers (ECF Nos. 19-20), IFRRF respectfully requests that the Court: appoint it as Lead Plaintiff; approve the selection of AF&T as Lead Counsel for the Class; and deny the competing motion, or in the alternative, IFRRF should be allowed to take limited discovery of Skrypski. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv); ECF Nos. 35-36.

Dated: May 5, 2025

Respectfully submitted,
**ABRAHAM, FRUCHTER
& TWERSKY, LLP**

By:  /s/ *Patrice L. Bishop*
Patrice L. Bishop
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Tel:    (310) 279-5125
Email:  pbishop@aftlaw.com

**ABRAHAM, FRUCHTER
& TWERSKY, LLP**
Mitchell M.Z. Twersky
Atara Hirsch
Lawrence D. Levit
450 Seventh Avenue, 38th Floor
New York, NY  10123
Tel:    (212) 279-5050
Fax:    (212) 279-3655
Email:  mtwersky@aftlaw.com
            ahirsch@aftlaw.com
            llevit@aftlaw.com

*Proposed Lead Counsel for Proposed
Lead Plaintiff IFRRF*

7